The petitioners, Masonite Corporation and International Paper Company, raise two issues in their mandamus petition and their motion to stay the trial proceedings: 1) whether the trial court erred in certifying a national class action pursuant to Rule 23(a) and (b)(3), Ala. R. Civ. P., and 2) whether the trial judge erred in refusing to recuse, in light of the petitioners' allegations that the trial judge and counsel for the plaintiffs engaged in improper ex parte communications in drafting the class certification order.
Although I concur in the result of the majority's opinion as to the recusal issue, without accepting the language contained therein addressing this issue, I must respectfully dissent from the majority's denial of the petition for the writ of mandamus and the denial of the motion to stay, because I believe the petitioners have put forth sufficient evidence to warrant this Court's ordering an answer and briefs.
 FACTS
The respondents filed a class action against Masonite Corporation and others, alleging that hardwood siding sold by the defendants was inherently defective and that the defendants had systematically misled their customers about the product. The proposed class includes all persons affected by any of this siding sold after 1980. The defendants note that since 1980 over 5 billion board feet of this siding has been installed in over 3 million structures in all 51 jurisdictions included in the class action pleadings.
The trial judge, pursuant to the plaintiffs' motion, certified the action against these defendants as a national class action; as a result, the petitioners say, there is a putative *Page 1077 
class of over 3 million plaintiffs. I am attaching the class certification order of the trial judge as Appendix A to this special opinion.
I agree with the petitioners' assertion that they have shown that the trial judge erred in certifying this action as a national class action. They say the trial judge erred because: 1) he impermissibly failed to address and resolve the choice of law issues, in violation of both Rule 23 and the United States Constitution; 2) he authorized a national class action where there are no predominant common questions of law or fact; and 3) he constructed a class that is neither superior nor manageable.
Rule 23(a), Ala. R. Civ. P.,[4] addresses the initial requirements that must be present in order for a trial judge to certify a class action:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
(Emphasis added.) After a plaintiff has shown that the prerequisites of Rule 23(a) have been met, the trial court then must look to Rule 23(b), in order to determine what type of class action will be maintained; only after the plaintiffs have satisfied the pertinent portion of Rule 23(b) may the trial judge certify the action as a class action. The trial judge in this case found that the plaintiffs' claims mainly concerned monetary relief, so he certified the class pursuant to Rule 23(b)(3), which reads:
 "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
". . . .
 "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
(Emphasis added.)
In arguing that the requirements of Rule 23 have not been met in this case, the petitioners raise two important points: 1) that the application of Alabama law to all plaintiffs in this case would violate their constitutional rights to due process; and 2) that even if the trial judge allows the jury to consider liability by applying the separate tort laws of the 51 different jurisdictions, litigation of this class action would not only violate the law as expressed in Rule 23, but would also violate their constitutional rights to due process. I will discuss each of these arguments separately.
 I.
The petitioners first argue that this national class certification violates both Rule 23 and the United States Constitution because, they argue, the certification order is in direct conflict with the United States Supreme Court's decision in Phillips Petroleum Co. v. Shutts, 472 U.S. 797,105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The petitioners argue that because fewer than 1% of the potential plaintiffs live in Alabama, application of Alabama tort law to the entire class violates their constitutional right to due process as outlined inShutts, *Page 1078 
because the potential plaintiffs reside in all 51 jurisdictions and these jurisdictions do not share common tort laws; thus, they say allowing a class action means Masonite could be held liable under Alabama law to all plaintiffs, even though particular plaintiffs might reside in a jurisdiction whose law would not allow a recovery.
I believe the petitioners have sufficiently shown that this certification order may violate the mandate of Shutts. I realize, of course, that the majority has written extensively, citing cases, and that it distinguishes Shutts, but it does so without the benefit of an answer and briefs; but I would not deny the writ before I heard from both sides, especially in view of the due process concerns presented and in view of the fact that recent two federal cases, which have been decided since this petition was filed, have addressed the same issues raised by the petitioners. Upon review of these cases and the class certification order, I believe that the issues raised by the petitioners relating to the certification of a national class action clearly show that this lawsuit may implicate many federal constitutional rights.[5]
In Shutts, where the facts were remarkably similar to the facts of this present case,[6] the United States Supreme Court held that a party's due process rights are violated where a state court applies its own law in a class action proceeding and the state does not have "significant contacts or a significant aggregate of contacts to the claims asserted byeach member of plaintiff class." (Emphasis added). Shutts,472 U.S. at 821, 105 S.Ct. at 2979. Important in the Shutts
decision, in my opinion, was the fact that both Texas and Oklahoma had different laws concerning the computation of mineral royalties. Id. at 814-22, 105 S.Ct. at 2975-80. The United States Supreme Court held in Shutts that application of Kansas law in that national class action violated the defendant's federal constitutional right to due process; the Court explicitly stated that the issue presented in Shutts was one of federal constitutional law, which would pre-empt any state action that would violate that right. Id. at 821-22,105 S.Ct. at 2979-80.
I believe the majority mistakenly interprets the holding ofShutts by stating that "Shutts . . . require[s] only 'the best notice practicable under the circumstances.' " 681 So.2d at 1075. I read the holding of Shutts differently. Chief Justice Rehnquist, in announcing the decision of the Court in Shutts, stated the constitutional requirements as follows:
 "Kansas must have a 'significant contact or sufficient aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair. Given Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits.
 "When considering fairness in this context, an important element is the expectation of the parties. There is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas *Page 1079 
law would control. Neither the Due Process Clause nor the Full Faith and Credit Clause requires Kansas 'to substitute for its own [laws], applicable to persons and events within it, the conflicting statute of another state,' but Kansas 'may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them.' "
Id. at 821-22, 105 S.Ct. at 2979-80. (Emphasis added; citations omitted.) It is this holding in Shutts that convinces me that the petitioners have sufficiently shown that they are entitled to the extraordinary relief they seek.[7] Because the petitioners have shown that over 99% of the potential plaintiffs live outside the State of Alabama, and because the record presently fails to show that Alabama has sufficient contacts with each of the potential plaintiffs to apply its law to all claims asserted by the class, I would like to have the trial judge's response to the petitioners' argument before he proceeds further with the class action. From the facts, as I view them now, it would seem apparent that the certification order violates the rule of Shutts. If Masonite and the other defendants are held liable to all 3 million plaintiffs under Alabama's tort laws, there could be no question that their constitutional rights have been violated.
 II.
This class certification order seems to violate the spirit and purpose of Rule 23. In order to ensure that the petitioners' constitutional rights to due process are not violated, the trial court would be required to apply the tort laws of all other 50 jurisdictions in determining Masonite's liability in this national class action. Although I am aware that the trial judge has not made his ruling concerning the law to be applied, it is apparent from the record here thatShutts forbids the application of Alabama law to the entire class; therefore, the trial judge's only option would be to apply the different tort laws from the other 50 jurisdictions — but to do so would violate the spirit and purpose of Rule 23. Rule 23(a)(2) states that a class action may be maintained only where "there are questions of law or fact common to the class." Further, Rule 23(b)(3) requires a class action be "superior to other available methods for the fair and efficient adjudication of the controversy."
There is recent support for my position that the class certification order here could violate the petitioners' due process rights. While this petition was pending, the United States Court of Appeals for the Fifth Circuit, in Castano v.American Tobacco Co., 84 F.3d 734 (5th Cir. 1996), decertified a class action brought in a federal court, on the basis that the provisions of Rule 23(a) and Rule 23(b)(3) had not been satisfied. In Castano, the Fifth Circuit held that the trial judge had abused his discretion in certifying a national products liability class action against seven tobacco companies, in a factual situation remarkably similar to the factual situation on which this present action is based. Important to the court's determination that the class action could not be maintained was the fact that before certifying the class the trial judge had not considered the variations in the tort laws of the 50 different jurisdictions. The court also held that the trial judge erred in certifying the class in regard to numerous fraud claims; the court said the reliance element of a fraud claim eliminates "common issues of fact or law." The court held that the trial judge's determination of manageability was likewise erroneous.
Although I was aware of the Castano decision as soon as it was released, the petitioners have filed a supplemental brief in which they correctly point out that the underlying facts of this present class suit are remarkably similar to the facts presented in Castano. For example, in this case, the representative plaintiffs have asserted the following claims against Masonite: fraudulent suppression, fraudulent misrepresentation, breach of express and implied warranties, products liability, and negligence. In Castano the plaintiffs asserted claims for: "fraud and deceit, *Page 1080 
negligent misrepresentation, . . . negligence and negligent infliction of emotional distress, violation of state consumer protection statutes, breach of express warranty, breach of implied warranty, [and] strict product liability." 84 F.3d at 737. In both of these case, the trial judge certified a national class action, pursuant to Rule 23, without conducting a jurisdictional survey concerning the variations in differing state tort laws.
The Fifth Circuit's opinion in Castano is persuasive not only because of the similarities between the two cases, but because this Court has held, in Bracy v. Sippial Electric Co. Inc.,379 So.2d 582 (Ala. 1980), that federal cases interpreting the Federal Rules of Procedure are authority in the construction of the Alabama Rules of Civil Procedure; therefore, Castano is binding authority.
I realize, of course, that a trial judge has broad discretion in certifying a class action and that this Court will not by writ of mandamus act to undo a class certification except upon a clear showing that the trial judge abused his discretion in certifying the class. I believe that in this case — a case that has many constitutional implications — the learned trial judge has failed to follow federal precedents, and I believe the writ of mandamus would be appropriate to remedy the judge's abuse of discretion.
The reasons for my conclusion are: First, the trial judge failed to rule on what law would be applied in this action before he certified the class. Second, the trial judge erred in determining that the class is manageable. Third, the trial judge erred in ruling that the class certification satisfies the Rule 23(b)(3) requirement of "predominance" and "superiority." I will discuss these issues in the order in which that I have just stated them.
 A.
Although the trial in this class action is scheduled to begin within 90 days, and could begin as early as August 19, 1996, the trial judge has not ruled on which law will be applied in this action. The majority erroneously believes that the failure of the trial judge to rule on this important issue does not affect the determination of whether certification of this national class action was proper.[8] However, this ruling is crucial to determining the validity of the class certification in the first instance. As I have previously discussed, underShutts Alabama law cannot be applied to all the claims asserted by the national class without violating the petitioners' federal constitutional right to due process. Consequently, now that the trial judge has made the crucial initial decision on certification of a national class, it follows that the only option available to the trial judge is to apply the differing tort laws from all 51 jurisdictions. The Fifth Circuit held inCastano that the failure of the trial judge to make a ruling on the choice of law issue required that the class be decertified; I would make a similar holding in this case. Due process at least requires that a class defendant know the scope of what that defendant must defend against.
In his class certification order, the trial judge stated that "if the Court concludes that the law of a single state cannot, consistent with Alabama's choice of law rules, be applied to one or more of plaintiffs' claims, the Court is not persuaded that the variations in applicable state laws are so significant as to create predominant legal issues." See, Appendix A, 681 So.2d at 1090. There are two significant points to be raised from this ruling: 1) it is apparent that the trial judge, in making this ruling, has failed to rule on which law will be applied in this national class action, and 2) the trial judge has stated that the variation in different tort laws is not "so significant as to create predominant individual issues." Although it is not apparent from the record, it appears that the trial judge has not yet undertaken a jurisdictional survey concerning the differing laws of our sister jurisdictions. In my opinion, serious consideration of either of these points by the majority would require decertification, because *Page 1081 
the law seems clear that "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." Castano, 84 F.3d at 741. See, Georgine v. AmchemProducts, Inc., 83 F.3d 610 (3d Cir. 1996). As I read the federal decisions addressing national class actions, a trial court must consider variations in state law before certifying a class action, where the law of one jurisdiction cannot be constitutionally applied to all claims. See, Georgine; Castano;In re American Medical Systems, Inc., 75 F.3d 1069 (6th Cir. 1996); In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 184,133 L.Ed.2d 122 (1995), Grady v. Rhone-Poulenc Rorer Inc., ___ U.S. ___, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995); Walsh v. Ford MotorCo., 807 F.2d 1000 (D.C. Cir. 1986), cert. denied, 482 U.S. 915,107 S.Ct. 3188, 96 L.Ed.2d 677 (1987); Alabama v. Blue BirdBody Co., Inc., 573 F.2d 309 (5th Cir. 1978). In fact, inCastano the Court of Appeals for the Fifth Circuit concisely articulated the requirement that a trial judge make a ruling regarding the law to be applied before certifying a class action pursuant to Rule 23(b)(3).
 "A [trial] court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions. 'In order to make the findings required to certify a class action under Rule 23(b)(3) . . . one must initially identify the substantive law issues which will control the outcome of the litigation.' Alabama v. Blue Bird Body Co., 573 F.2d 309, 316
(5th Cir. 1978)."
84 F.3d at 741.
The plaintiffs, and apparently the majority of this Court, believe that the fact that the trial judge has failed to rule on — much less conduct a jurisdictional survey regarding — the applicable law is a minor point, having no bearing on the validity of the class certification order and is a matter that can be decided later. That apparently is not the law, as interpreted by the federal cases I cite above.
As Judge Harry T. Edwards and then Judge Ruth Bader Ginsberg wrote for the District of Columbia Circuit Court of Appeals:
 "Appellees see the 'which law' matter as academic. They say no variations in state warranty laws relevant to this case exist. A [reviewing] court cannot accept such an assertion 'on faith.' Appellees, as class action proponents, must show that it is accurate. We have made no inquiry of our own on this score, and, for the current purpose, simply note the general, unstartling statement made in a leading treatise: 'The Uniform Commercial Code is not uniform.' "
Walsh v. Ford Motor Co., 807 F.2d at 1016. As Judge Edwards and Judge Ginsberg wrote, "the 'which law' matter" is not purely "academic." The trial judge's determination — or lack thereof — of the "which law" issue is crucial, and in this case the trial judge's failure to make that determination before certifying this as a national class action was error. The remedy would be for this Court to at least require an answer from the trial judge and order that the parties brief the more recent federal decisions touching the issue. In holding that the national class action must be decertified, the Court inCastano stated:
 "The [trial] court's consideration of state law variations was inadequate. The survey provided by the plaintiffs failed to discuss, in any meaningful way, how the court could deal with variations in state law. . . . Nothing in the record demonstrates that the court critically analyzed how variations in state law would affect predominance."
84 F.3d at 743. Similarly, the trial judge in this case has not considered the variations in the tort laws of our sister jurisdictions. Based on the fact that Shutts prohibits the application of Alabama tort law in this action and the fact that the trial judge has not even conducted a jurisdictional survey on the differing laws, it appears to me that the petitioners have made at least a prima facie showing that this national class action was not properly certified. *Page 1082 
 B.
There is another reason why we should require an answer and briefs. The trial court failed to consider how the variation in different tort laws would affect the Rule 23 "manageability" requirement. In the certification order the trial judge stated:
 "Masonite argues that the class treatment of this action would be unmanageable, and the court should deny class certification on this basis. While the Court acknowledges that the task of managing this action will require the Court's time, attention and supervision, it finds that the case is manageable and that this Court is capable of managing it. . . . [T]he Court is persuaded that the selection and application of appropriate substantive laws . . . will be manageable."
See Appendix A, 681 So.2d at 1090. I believe that the manageability of the action is intricately tied to the "which law" question. I cannot understand how the trial judge concluded that the class action would be manageable, absent a sufficient determination of what laws will be applied in this action, because the analysis and application of different tort laws to the petitioners on claims asserted by the various class plaintiffs, 99% of whom reside in jurisdictions other than Alabama, have great bearing on whether this case will be manageable. The Castano court seems to agree with this analysis, for it held that "[t]he [trial] court also failed to perform its duty to determine whether the class action would be manageable in light of state law variations." Castano, 84 F.3d at 743. Basically, the Castano court held that a trial court cannot rule that a national class action is manageable, without determining the applicable laws and considering how the different laws will affect manageability. "In summary, whether the specter of millions of cases outweighs any manageabilityproblems in this class is uncertain when the scope of anymanageability problems is unknown." Castano, 84 F.3d at 744. (Emphasis added.)
Although the trial judge has ruled that the class action is manageable, this ruling seems unpersuasive when viewed in light of the fact that the trial judge has not considered state law variations. The trial judge's assurance that the class is manageable must be considered in light of the fact that so many of the operative facts upon which this determination was made are disputed; when it is so considered, it is obvious that the judge made the factual determination of manageability of this national class action without sufficiently considering the choice of law issue and its effect on the determination.
 C.
There is another reason why I believe that this Court should require an answer and briefs before allowing this class action to proceed. It appears to me that the trial court erred in determining that the plaintiffs satisfied the predominance requirement of Rule 23(b)(3). In ruling that the predominance requirement had been satisfied, the trial court wrote:
 "To predominate, common issues must constitute a significant part of individual class members' cases. Where, as here, a common course of conduct has been alleged arising out of a common nucleus of operative facts, common question predominate. Jury findings on common questions of fact and Court rulings on common issues of law will significantly advance the resolution of identical or substantially similar questions and issues which would require resolution in connection with individual claims.
 " . . . Accordingly, the Court finds that [the] plaintiffs have satisfied the predominance requirement of Rule 23(b)(3)."
(Emphasis added; citations omitted.) In making this determination, the trial court, and the majority of this Court in its opinion, relied on Eisen v. Carlisle Jacquelin,417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and a Fifth Circuit case, Jenkins v. Raymark Industries, Inc., 782 F.2d 468
(5th Cir. 1986). However, in Castano, the Fifth Circuit discussed both of the cases relied on by the majority, and specifically stated that neither Eisen or Jenkins can be used in determining whether the predominance requirement has been satisfied in a national class action alleging fraudulent conduct, where laws of different jurisdictions would be *Page 1083 
applied.[9] Castano states in clear terms that where a class action is based on fraud, which normally requires a plaintiff to prove reliance, a national class action cannot be certified unless all plaintiffs in the action can show that they relied on the same conduct and that the conduct induced them to purchase the product:
 "A [trial] court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met. Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. See, Manual for Complex Litigation § 30.11 (3d ed. 1995).
 "The [trial] court's predominance inquiry demonstrates why such an understanding is necessary. The premise of the court's opinion is a citation to Jenkins and a conclusion that class treatment of common issues would significantly advance the individual trials. Absent knowledge of how addiction-as-injury cases would actually be tried, however, it was impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials. The court just assumed that because the common issues would play a part in every trial, they must be significant. The court's synthesis of Jenkins and
Eisen would write the predominance requirement out of the rule, and any common issue would predominate if it were common to all the individual trials.
 "The court's treatment of the fraud claim also demonstrates the error inherent in its approach. According to both the advisory committee's notes to Rule 23(b)(3) and this court's decision in Simon v. Merrill Lynch, Pierce, Fenner Smith, Inc., 482 F.2d 880 (5th Cir. 1973), a fraud class action cannot be certified when individual reliance will be an issue. The [trial] court avoided the reach of this court's decision in Simon by an erroneous reading of Eisen; the court refused to consider whether reliance would be an issue in individual trials."
Castano, 84 F.3d at 745. (Emphasis added; footnotes omitted.) It appears to me that the trial court's error here is the same as the error addressed in Castano. How can the trial court here determine liability for multiple counts of fraud in a national class action when the crucial issue of reliance, which is highly dependent on the circumstances of each individual transaction, is a crucial factor in a majority of the claims asserted by the class? How can this conclusion be reached in this case where the facts relating to the knowledge and reliance issues vary from claimant to claimant? As the petitioners argue in their supporting briefs:
 "Plaintiff Mosley bought his home knowing Masonite siding was installed, but the fact made no difference in his decision to purchase [the home]. This was true for plaintiff Bradshaw as well.
 "Plaintiff Stauffer is a current owner who purchased from a prior owner who had received a settlement from Masonite — and knew when he purchased from the prior owners that there had been a siding problem.
 "Plaintiffs Brining, Loumakis and Naef never saw an advertisement for Masonite before acquiring any interest in the house that is now the subject of the claim here.
 "Plaintiff Loumakis had no involvement in the plans for her Masonite-sided home, or the materials used to construct it, or even any idea what kind of siding was on her home when she bought it.
 "Plaintiffs Mosley and Stauffer admit that Masonite never made any fraudulent statements to them. Plaintiffs Brining, Loumakis, Stauffer, Bradshaw and Murphy were exposed to no Masonite advertising *Page 1084 
and saw no other Masonite representations.
 "Plaintiffs Mosley and Naef admitted to the complete absence of reliance on any Masonite representation in purchasing their homes. And Plaintiff Murphy knew when the house was purchased that Masonite's warranty reimbursement program provided for a formula based on the 'cost of the board' itself."
If there are this many variations between the representative plaintiffs concerning the circumstances in which they received Masonite siding, and if the element of reliance is a fact-based question dependent on each individual independent transaction, how could the trial court find that there existed such predominant issues necessary for certifying a national class action? How could this ruling be made in light of the fact that there are possibly three million more plaintiffs, each of whom bought a Masonite product in a separate independent transaction? Further, how can one justify the "predominance" finding in light of the state law variations concerning the requisite standards for showing reliance, especially where a trial court has made no jurisdictional survey in relation to the varying state tort laws for the determination of liability for fraudulent conduct?
I believe that Castano, the committee comments to Federal Rule 23, and the present fact situation show why a national class action asserting liability for fraudulent conduct cannot satisfy the predominance inquiry, especially where a trial court would be required by Shutts to apply the various state tort laws. Therefore, I believe that the trial judge abused his discretion in finding that common questions of law and fact predominate over questions involving only individual members.
 D.
The trial judge also ruled in his class certification order that certification of a national class action would satisfy the Rule 23 requirement that the class proceeding be "superior to other available methods for the fair and efficient adjudication of the litigation."
 "In determining whether the class action device is superior here, this Court must consider what other procedures, if any, exist for disposing of the dispute before it. The most obvious, and perhaps only, alternative to a class action is to remit the Class members to the institution of individual actions. The Court finds that class treatment of this action is far more favorable than the individual adjudication of even a small fraction of the Class members' claims. The Court finds that in the absence of class certification, it is probable that many claims would not be pursued because litigation costs would be prohibitive, and because many Class members would never know of their potential claims. The use of the class device in this action will serve the goals of economies of time, effort and expense by preventing the same issues from being litigated and adjudicated in multiple courts throughout the country."
(Emphasis added.) Although the trial judge is correct in thinking that often the possibility of numerous separate lawsuits asserting the same issue of liability against a defendant may be a basis for certifying a class action, this possibility is not the controlling rationale for certifying a class action. The court in Castano was faced with a similar ruling entered by the trial judge, i.e., a finding of superiority based on the fact that the class mechanism would be superior to individual actions involving similar claims. The Court said:
 "The [trial] court's rationale for certification in spite of such problems — i.e., that a class trial would preserve judicial resources in the millions of inevitable individual trials — is based on pure speculation. Not every mass tort is asbestos, and not every mass tort will result in the same judicial crises. The judicial crisis to which the [trial] court referred to is only theoretical."
84 F.3d at 747. The concern for judicial economy is not so great in cases where fraud is asserted, because in fraud cases individual trials tend to be a superior method for determining liability. The Castano court addressed this issue:
 "Individual trials will determine whether individual reliance will be an issue. Rather *Page 1085 
than guess that reliance may be inferred, a [trial] court should base its determination that individual reliance does not predominate on the wisdom of such individual trials. The risk that a [trial] court will make the wrong guess, that the parties will engage in years of litigation, and that the class will ultimately be decertified (because reliance predominates over common issues) prevents this class action from being a superior method of adjudication."
84 F.3d at 749. Further, "[t]he complexity of the choice of law inquiry also makes individual adjudication superior to class treatment," especially when the class certification is premature because of the failure of the trial court to make a jurisdiction survey of the various tort laws. Id. at 749-50. A premature class certification may violate a defendant's right to due process, because "[p]re-mature certification deprives the defendant of the opportunity to present that argument [the predominance argument] to any court and risks decertification after considerable resources have been expended." Id.
Additionally, the fact that the trial judge has ruled that the class action trial will be separated into different "phases" raises questions as to the superiority of the class action and also implicates the right to a jury trial. "TheSeventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." Castano, 84 F.3d at 750. The United States Constitution prohibits multiple juries from determining a defendant's liability where the juries would consider common issues of law and fact, and the risk of decertification after trial implicates the right to due process. In re Rhone-PoulencRorer, Inc., 51 F.3d 1293 (7th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995); Alabama v. BlueBird Body Co., Inc., 573 F.2d 309 (5th Cir. 1978). Although the trial judge has ruled only that the first stage of the litigation will involve a determination as to whether this siding is defective, that ruling does not negate the possibility that the petitioners' jury trial rights will be violated, especially in light of the fact that the trial court will be required to apply laws of different jurisdictions, many of which have adopted theories of comparative negligence. TheCastano opinion clearly articulates this concern:
 "Severing a defendant's conduct from comparative negligence results in the type of risk that our court forbade in Blue Bird. Comparative negligence, by definition, requires a comparison between the defendant's and the plaintiff's conduct. Rhone-Poulenc, 51 F.3d at 1303 ('Comparative negligence entails, as the name implies, a comparison of the degree of negligence of plaintiff and defendant.'). At a bare minimum, a second jury will rehear evidence of the defendant's conduct. There is a risk that in apportioning fault, the second jury could reevaluate the defendant's fault, determine that the defendant was not at fault, and apportion 100% of the fault to the plaintiff. In such a situation, the second jury would be impermissibly reconsidering the findings of a first jury. The risk of such reevaluation is so great that class treatment can hardly be said to be superior to individual adjudication."
84 F.3d at 751. Based on what the court said inCastano, I believe the trial judge erred in determining that a national class action in this matter would be superior to other methods of adjudication.
Based on the foregoing, I must respectfully disagree with the majority in its refusal to require the respondent trial judge to file an answer and a brief relating to the issues I have raised in this dissent.
 III.
Although I concur in the result reached by the majority on the recusal issue, I do want to comment about statements made concerning counsel's filing of this petition. I reviewed extensively the petitioners' claims that the trial judge should disqualify himself; by concurring in the result on the recusal issue I should not be understood as agreeing with any statement in the majority opinion that would classify the petition here as frivolous. Although I recognize that the practice of trial judges in Alabama to frequently ask the attorneys on one side to draft a proposed order, I believe that trial judges should be careful to make sure that the other party or *Page 1086 
parties receive notice of the proposed order and an opportunity to object or respond. I do not suggest any bad faith on the part of any attorney representing any of the parties in this case. Although I agree that the petitioners have not shown an entitlement to a writ of mandamus on the recusal issue, I do not think their claim is frivolous. It was only after I fully considered the evidence they filed, and the legal arguments they advanced, that I was persuaded to concur in the result on the recusal issue. I realize, of course, that both the plaintiffs and the trial judge claim this petition is a frivolous attack and claim that this mandamus proceeding is intended to delay the trial and the ultimate resolution of the defendants' liability; I do not see it in this light, especially considering the fact that this action involves a class of potentially 3 million plaintiffs and the further fact that two federal courts have recently held, in comparable factual situations, that the trial judge erred in certifying a class action.
 IV.
Rule 1 of the Alabama Rules of Civil Procedure states, in part, that the Rules should "be construed to secure the just, speedy and inexpensive determination of every action" upon its merits. This trial will be long, complicated, and expensive; expensive not only to the parties in the action, but expensive to the State. I believe it would be in the best interests of justice and fairness to at least order an answer and briefs so that we could examine the issues in more detail, because I believe them to be meritorious.
Class actions, properly utilized, can conserve judicial time and resources, but class actions can also raise serious concerns regarding due process and can often subject defendants to what has been termed "blackmail settlements." Class actions often place immense pressure on defendants to settle, considering the "all or nothing" nature of class action verdicts. See, Matter of Rhone-Poulenc Rorer, Inc., 51 F.3d at 1298-99; Henry J. Friendly, Federal Jurisdiction: A GeneralView 120 (1973).
I do not pass judgment on the merits of this class action, but in view of what this Court said in Bracy v. SippialElectric Co., 379 So.2d 582 (Ala. 1980) — that federal cases interpreting the Federal Rules of Civil Procedure are authority for interpreting the Alabama Rules of Civil Procedure — I believe the Fifth Circuit, in Castano, correctly decided several of the issues raised in this mandamus petition. I would require the respondent judge to file an answer and brief, and, unless convinced that the issues the court addressed inCastano were materially different from those presented in this case, I would issue the writ of mandamus and decertify the class.
 APPENDIX A
IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA
Judy Naef, et al., Plaintiffs,
vs.
Masonite Corporation, et al., Defendants.
Civil Action No. CV-94-4033
 ORDER CERTIFYING PLAINTIFF CLASS
Plaintiffs have moved for an order, pursuant to Rules 23(a)(1)-(4) and (b)(1)-(3) of the Alabama Rules of Civil Procedure, certifying a plaintiff class of all individuals and entities owning property in the United States on which Masonite hardboard siding manufactured since January 1, 1980 has been installed. The Court has considered the legal memoranda and documentary and testimonial materials submitted by the parties. The Court has also considered the oral arguments of counsel for the parties made during the October 16, 1995 hearing on plaintiffs' motion. For the reasons stated below, plaintiffs' motion is GRANTED pursuant to Rules 23(a)(1)-(4) and (b)(3).
FACTUAL BACKGROUND
The named plaintiffs are alleged to own property on which hardboard siding manufactured by defendants Masonite Corporation and/or International Paper Company (together "Masonite") since January 1, 1980 has been installed. Plaintiffs allege that, due to its defective design, Masonite hardboard siding is subject to moisture invasion problems, *Page 1087 
and that as a result of this defect, the siding swells, buckles, and prematurely rots, deteriorates and fails, thereby causing damage to property on which this siding is installed. Plaintiffs further allege that since at least 1980 Masonite has failed to disclose its knowledge of the design defect, and, in fact, has actively concealed this information from them and from the public. Plaintiffs further allege that through substantially uniform written advertisements in national consumer and professional publications, and in substantially uniform written warranties, Masonite falsely represented and warranted that its hardboard siding was not defective and was durable, sturdy, and designed for installation in all weather conditions and climates, including moist environments. Plaintiffs allege that Masonite's conduct is violative of consumer protection statutes and gives rise to liability for fraudulent suppression, fraudulent misrepresentation, breach of expressed and implied warranties and negligence. Plaintiffs seek compensatory and punitive damages and other relief.
The named plaintiffs' allegations and claims against Masonite are brought on their own behalf and on behalf of a proposed plaintiff class of all individuals and entities owning property in the United States on which Masonite hardboard siding manufactured since January 1, 1980 has been installed (the "Class" or "Masonite Class"). The named plaintiffs also allege claims on their own behalf and on behalf of proposed subclasses against defendant Stacy's Cash Carry Building Materials, Inc., Ace Hardware, Inc., Scotty's Homebuilder's Supply, Inc. and Mobile Lumber Building Materials, Inc. (the "Wholesaler/Retailer Defendants").
The Court conditionally certified the Masonite Class in an order dated February 3, 1995. In that order, the Court directed that following the completion of class certification discovery, the Court would receive additional briefs and arguments on the propriety of class certification in this action. After approximately seven months of discovery, the parties submitted lengthy and thorough legal memoranda, as well as numerous documents and deposition transcripts. In addition, at the Court's request, the parties submitted testimony by legal experts on class action issues. On October 16, 1995, the Court heard extensive oral argument from counsel for the parties. Finally, at the Court's direction, counsel submitted post-hearing letter briefs concerning questions raised by the Court during the hearing. After review and consideration of all of these materials, the Court finds that class action treatment of plaintiffs' claims against Masonite is appropriate under Rules 23(a)(1)-(4) and (b)(3).
DISCUSSION A. General Standards
Determination of plaintiffs' motion for class certification is committed to the sound discretion of this Court. Ex parteGold Kist, Inc., 646 So.2d 1339, 1341 (Ala. 1994). Plaintiffs, however, bear the burden of establishing that the requirements of Rule 23 have been met. Ex parte Blue Cross Blue Shield ofAla., 582 So.2d 469, 477 (Ala. 1991). In determining whether plaintiffs have satisfied their burden, the Court assumes as true the substantive allegations of plaintiffs' Amended Complaint. Eisen v. Carlisle Jacquelin, 417 U.S. 156, 163
(1974); In re Copley Pharmaceutical, Inc., 158 F.R.D. 485, 489
(D. Wyo. 1994). Although inquiry into the merits of the case is not appropriate in making the class certification decision (Eisen, 417 U.S. at 178; Ex parte Gold Kist, Inc., 646 So.2d at 1343), the Court may consider documents or testimony bearing on the Rule 23 elements of class certification. In this matter, both parties have submitted, and the Court has considered, substantial documentary and testimonial materials they contend support their respective positions.
Rule 23 of the Alabama Rules of Civil Procedure sets forth the prerequisites to all class actions in this state. The requirements of Rule 23(a) are as follows: (1) the class is so numerous that joinder of all members individually is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately *Page 1088 
represent the interests of the class. Ala.R.Civ.P. 23(a)(1)-44).[1]
After demonstrating that the Rule 23(a)(1)-(4) requirements are satisfied, plaintiffs must also satisfy the elements enumerated in Rule 23(b)(1), (2) or (3). Ex parte Gold Kist,Inc., 646 So.2d at 1341. The Court finds that the requirements of Rule 23(b)(1) and (2) are not here met. At issue, then, is whether plaintiffs have demonstrated that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy." Ala.R.Civ.P. 23(b)(3). The Court will first analyze the Rule 23(a) requirements and later discuss the Rule 23(b)(3) prerequisites.
 B. Rule 23(a) Requirements 1. Numerosity.
The first requirement of Rule 23(a), numerosity, is satisfied if the proposed class is so numerous that joinder of all members is impracticable. Ala.R.Civ.P. 23(a)(1). "Impracticable" does not mean "impossible." Plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the Class. Bradley v. Harrelson,151 F.R.D. 422, 426 (M.D. Ala. 1993); 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure, Civil 2d at § 1762. The precise number and identity of class members need not be shown for certification of the class; good faith and common sense estimates of the number of class members suffice. See, e.g., Id; Ash v. Board of Electricians and theCity of New York, 124 F.R.D. 45, 47 (E.D. N.Y. 1989).
The numerosity requirement is satisfied in this action. Although the exact number of Class members is not known at this time, plaintiffs estimate that the Class may consist of at least hundreds of thousands of persons. Masonite believes the Class may include millions of homeowners. Classes of this size satisfy the Rule 23(a) numerosity requirement. 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice andProcedure, Civil 2d at § 1762.
 2. Commonality.
The second element of Rule 23(a), commonality, is satisfied if one or more common questions of fact or law affect all or a substantial number of the Class members. Ala.R.Civ.P. 23(a)(2);Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir. 1986). The provision does not require that all the questions of law and fact raised by the complaint be common. Inre Copley, 158 F.R.D. at 489; 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure, Civil 2d at § 1763.
The Court finds that there are common issues of fact present in this action, which may include, but are not limited to, whether Masonite hardboard siding was defectively designed; whether Masonite intentionally, recklessly or negligently failed to disclose and concealed its knowledge that the siding was defective; whether Masonite intentionally, recklessly or negligently misrepresented the nature, quality, performance, or characteristics of its hardboard siding; and whether Masonite conspired with other manufacturers of hardboard siding for the purpose of concealing information about the nature, quality and performance characteristics of the siding. There are also common issues of law applicable to the several factual claims. The Court finds that plaintiffs have made the required showing of commonality under Rule 23(a)(2).
 3. Typicality.
The third element of Rule 23(a), typicality, requires that plaintiffs demonstrate that the claims of the Class representatives are typical of the claims of the entire Class. Ala.R.Civ.P. 23(a)(3). The named plaintiffs' claims are typical if they arise from the same event, practice, or course of conduct that *Page 1089 
forms the basis of the Class claims, and if they are based on the same or substantially similar legal theories. Appleyard v.Wallace, 754 F.2d 955, 958 (11th Cir. 1985); Jenkins, 782 F.2d at 472. The typicality requirement does not require that the Class representatives' claims be identical to those of the Class members. Id.
The Court finds that the Class representatives' claims arise from the same alleged course of conduct of Masonite and are based upon the same legal theories as those of the absent Class members. The Court finds that typicality is established because the Class representatives must prove the same elements to establish their causes of action that the absent Class members would need to prove to prevail if they brought individual claims against Masonite. The Court recognizes that, depending on the resolution of the choice of law questions, there may be variations in the law applicable to the claims of Class members. That the named plaintiffs and members of the Class may have suffered varying degrees of injury and damage does not defeat typicality. Appleyard, 754 F.2d at 958; Jenkins, 782 F.2d at 472; Bradley, 151 F.R.D. at 426-27; Wright, Miller 
Kane, Federal Practice and Procedure, Civil 2d at § 1764. Similarly, the existence of alleged affirmative defenses does not defeat typicality. Ex parte Gold Kist, Inc., 646 So.2d at 1342; Rishcoff v. Commodity Fluctuations Sys. Inc.,111 F.R.D. 381, 382 (E.D. Pa. 1986). Accordingly, the typicality requirement of Rule 23(b)(3) is satisfied.
 4. Adequate Representation.
The final requirement of Rule 23(a) is that the Class representatives and counsel representing the Class be able fairly and adequately to protect the interests of all members of the Class. Ala.R.Civ.P. 23(a)(4). Satisfaction of this rule requires that the representative plaintiffs' interests not be antagonistic to those of the Class, and that the representative parties' attorneys be qualified, experienced, and generally able to conduct the litigation. Jenkins, 782 F.2d at 472;Jordan v. Swindall, 105 F.R.D. 485, 488 (N.D. Ala. 1985).
The Court finds that the named plaintiffs' interests are co-extensive and not in conflict with the interests of the Class members, and that the representative plaintiffs will fairly and adequately represent and protect the interests of all Class members. The Court has no reason to conclude that the representative plaintiffs will not prosecute this action vigorously, and take seriously their commitment to bear the responsibilities of serving as representative plaintiffs for the Class. Each of the named plaintiffs has testified at deposition and has responded to written discovery requests for the benefit of the Class. Similarly, the Court finds that the named plaintiffs are represented by experienced and qualified counsel, who the Court believes will vigorously and adequately represent the Class.
For the foregoing reasons, the Court finds that plaintiffs have satisfied each of the four requirements of Rule 23(a).
 C. Rule 23(b)(3) Requirements
After establishing that the requirements of Rule 23(a) have been met, plaintiffs must also satisfy one or more of the elements enumerated in Rule 23(b). Plaintiffs seek class certification pursuant to Rule 23(b)(3), which is appropriate if the Court finds that (1) common questions of fact or law predominate over individual questions, and (2) class treatment of plaintiffs' claims is superior to other available methods for the fair and efficient adjudication of the controversy. For the reasons stated below, the Court finds that both the predominance and superiority requirements are met in this case.
 1. Predominance.
To predominate, common issues must constitute a significant part of individual class members' cases. Jenkins, 782 F.2d at 1472; In re School Asbestos Litigation, 104 F.R.D. 422
(E.D. Pa. 1984), aff'd in part, and vacated in part on othergrounds, 789 F.2d 996 (3d Cir.) cert. denied, 479 U.S. 852
(1986); Wright, Miller Kane, Federal Practice and Procedure, Civil 2d at § 1778. Where, as here, a common course of conduct has been alleged arising out of a common nucleus of operative facts, common questions predominate. Id. Jury findings on common questions *Page 1090 
of fact and Court rulings on common issues of law will significantly advance the resolution of identical or substantially similar questions and issues which would require resolution in connection with individual claims.
That there may be difference in the degree of injury and damages suffered by individual Class members does not mean that individual issues predominate or that class certification is inappropriate. In re General Motors Corp. Pick-up Truck FuelTank Litigation, 55 F.2d 768, 817 (3d Cir. 1995); In re SchoolAsbestos Litigation, 789 F.2d 996, 1009-10 (3d Cir. 1986); In reDomestic Air Transportation Antitrust Litigation,137 F.R.D. 677, 692 (N.D. Ga. 1991). Similarly, Masonite's alleged affirmative defenses do not present predominantly individual issues which preclude class certification in this action. Exparte Gold Kist, Inc., 646 So.2d at 1342; Rishcoff,111 F.R.D. at 382. Further, if this Court concludes that the law of a single state cannot, consistent with Alabama choice of law rules, be applied to one or more of plaintiffs' claims, the Court is not persuaded that the variations in applicable state laws are so significant as to create predominant individual issues. General Motors, 55 F.3d at 818; In re SchoolAsbestos, 789 F.2d at 1010. Accordingly, the Court finds that plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).
 2. Superiority.
Rule 23(b)(3) directs the Court to determine that a "class action is superior to other available methods for fair and efficient adjudication of the litigation." Ala.R.Civ.P. 23(b)(3). In determining whether the class action device is superior here, this Court must consider what other procedures, if any, exist for disposing of the dispute before it. The most obvious, and perhaps only, alternative to a class action is to remit the Class members to the institution of individual actions. The Court finds that class treatment of this action is far more favorable than the individual adjudication of even a small fraction of the Class members' claims. The Court finds that in the absence of class certification, it is probable that many claims would not be pursued because litigation costs would be prohibitive, and because many Class members would never know of their potential claims. The use of the class device in this action will serve the goals of economies of time, effort and expense by preventing the same issues from being litigated and adjudicated in multiple courts throughout the country.
The Court finds that a class action is the superior method of adjudicating this controversy for, among other reasons, those contemplated by Rule 23(b)(3)(A)-(D): (1) any interest of Class members in individually controlling the prosecution of separate actions is outweighed by the potential for the comprehensive and expedient resolution of this class action; (2) the number and type of individual lawsuits commenced by members of the Class have failed to result in relief to the overwhelming majority of the Class members; (3) it is desirable to concentrate the litigation in a single forum, to prevent repetitive pre-trial discovery, trial preparation and trial, and to avoid inconsistent adjudications; and (4) the Court foresees no insurmountable difficulties likely to be encountered in the management of this action.
Masonite argues that class treatment of this action would be unmanageable, and the Court should deny class certification on this basis. While the Court acknowledges that the task of managing this action will require the Court's time, attention and supervision, it finds that the case is manageable and that this Court is capable of managing it. The Court is persuaded that notice can be effectively communicated to members of the Class; that pre-trial discovery can be efficiently and expeditiously completed by the parties; and that all, or substantially all, of the controversy can be resolved through a multi-phased trial, if necessary. In addition, the Court is persuaded that the selection and application of the appropriate substantive laws to be applied to plaintiffs' claims and Masonite's defenses will be manageable.
For the foregoing reasons, the Court finds that plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b)(3), and concludes that certification of *Page 1091 
the Masonite Class is appropriate under Rules 23(a)(1)-(4) and (b)(3).
 D. Rules 23(b)(1)(A) And (2)
In addition to moving for class certification under Rule 23(b)(3), plaintiffs seek certification under Rules 23(b)(1)(A) and 23(b)(2). These rules concern primarily claims for injunctive relief. Because the Court finds that plaintiffs' claims primarily are for monetary relief under Rule 23(b)(3), the Court finds certification under Rules 23(b)(1)(A) and (b)(2) inappropriate. Therefore, plaintiffs' motion for class certification under Rules 23(b)(1)(A) and (b)(2) is denied.
 E. Subclasses
Plaintiffs originally moved for class action treatment for subclasses consisting of Class members whose Masonite siding was sold and/or distributed by one of the four Wholesaler/Retailer Defendants. Named plaintiffs Judy Naef, Mark Moseley, Gregory Stauffer, Joseph Bashaw and Henry Murphy contend that the siding installed on their respective properties was sold and/or distributed by one or the other of the Wholesaler/Retailer Defendants. The Court finds that creation of subclasses would not advance the interests of the Class and denies plaintiffs' motion for certification of the proposed subclasses. However, the aforementioned named plaintiffs are permitted to pursue their individual claims against the Wholesaler/Retailer Defendants in this action.
 F. Notice
Class counsel are directed to submit to this Court, as soon as practicable after the entry of this Order, a proposed form of notice of the pendency of this class action; a summary notice for publication purposes; a proposed notice plan for dissemination of class notice; and a proposed notice order. If class counsel intend to argue that any or all of the costs of notice should be borne by Masonite, class counsel shall file and serve, with the proposed notice materials, a brief in support of that position. In the event plaintiffs file such a brief, Masonite shall have ten (10) days in which to file a responsive brief.
CONCLUSION IT IS ORDERED that plaintiffs' motion for certification of the following plaintiff Class is GRANTED and that following the Class is CERTIFIED under Rules 23(a)(1)-(4) and (b)(3) of the Alabama Rules of Civil Procedure: All individuals and entities owning property in the United States on which Masonite hardboard siding manufactured since January 1, 1980 has been installed. Excluded from the Class are the defendants, any entity in which any of them has a controlling interest, and their legal representatives, assigns and successors.
IT IS FURTHER ORDERED that Judy Naef, John Brining, Mark Moseley, Gregory Stauffer, Judy Loumakis, Joseph Bashaw and Henry Murphy are designated and appointed as representatives for the Class.
IT IS FURTHER ORDERED that the following law firms are designated and appointed as class counsel for the certified Class: McRight, Jackson, Dorman, Myrick Moore; Lieff, Cabraser, Heimann Bernstein; Doffermyre, Shields, Canfield 
Knowles; and Cunningham, Bounds, Yance, Crowder Brown.
IT IS FURTHER ORDERED that plaintiffs' motion for class certification under Rules 23(b)(1)(A) and (b)(2) of the Alabama Rules of Civil Procedure is DENIED.
IT IS FURTHER ORDERED that plaintiffs' motion for certification of the Wholesaler/Retailer subclasses is DENIED;
however, representative plaintiffs Naef, Moseley, Stauffer, Bashaw and Murphy are permitted to pursue their individual claims against the Wholesaler/Retailer Defendants in this action.
IT IS FURTHER ORDERED that as soon as practicable after entry of this Order, class counsel shall file and serve a proposed form of notice; a proposed form of summary notice for publication purposes; a proposed notice plan for dissemination of class notice; and a proposed notice order.
IT IS FURTHER ORDERED that if plaintiffs contend that any or all of the costs of notice should be borne by Masonite, they shall file and serve, along with their proposed notice materials, a brief in support of their *Page 1092 
position. If plaintiffs file such a brief, Masonite shall have ten (10) days in which to respond; and
IT IS FURTHER ORDERED that the motions to strike filed by the parties are DENIED.
SO ORDERED, this 15 day of November, 1995.
/s/ Robert G. Kendall
ROBERT G. KENDALL, Circuit Judge
[4] It should be noted that Rule 23 of the Alabama Rules of Civil Procedure is identical to Rule 23 of the Federal Rules of Civil Procedure.
[5] The majority seems to criticize the petitioners for filing a petition for extraordinary relief, as if it were frivolous. I do not think it is frivolous, especially in view of what the United States Supreme Court said in BMW of North America, Inc.v. Gore, ___ U.S. ___, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), about the principles of state sovereignty and comity that forbid a State from enacting policies for the entire Nation or imposing its own policy choice on neighboring states. Class certifications that have extraterritorial application to customers of a national manufacturer could come within the "safe harbor" concept alluded to in that decision. In other words, corporate executives of Masonite and International Paper could reasonably have interpreted the relevant statutes and laws of other States as establishing safe harbors for the sale and distribution of their products, without fear of product liability lawsuits.
[6] Shutts dealt with a class action suit, certified in Kansas state court, where the plaintiffs claimed the defendant had impermissibly withheld certain oil royalties. The plaintiff class numbered 33,000 and had representatives from all 51 jurisdictions; less than 1% of the class members lived in Kansas and only one quarter of 1% of the gas leases involved in the lawsuit were on Kansas land. Shutts, 472 U.S. at 801,105 S.Ct. at 2968.
[7] Mandamus review of a trial court's certification order is within this Court's power and is utilized to cure defects in a class certification order. See, Ex parte Central Bank of theSouth, 675 So.2d 403 (Ala. 1996); Ex parte Blue Cross BlueShield of Alabama, 582 So.2d 469 (Ala. 1991).
[8] Although the majority states that this order is a "conditional" class certification, a review of the trial judge's certification order shows that the class was conditionally certified on February 3, 1995. A review of Appendix A, the November 15, 1995, class certification order, shows this order to be a final order.
[9] The Fifth Circuit in Castano commented on the applicability ofJenkins, which is also a Fifth Circuit case, to national tort class actions:
 "The Jenkins court, however, was not faced with managing a novel claim involving eight causes of action, multiple jurisdictions, millions of plaintiffs, eight defendants, and over fifty years of alleged wrongful conduct. Instead, Jenkins involved only 893 personal injury asbestos cases, the law of only one state, and the prospect of a trial occurring only in one district. Accordingly, for purposes of the instant case, Jenkins is largely inapposite."
84 F.3d at 744.
[1] Rule 23 of the Alabama rules is identical to Rule 23 of the Federal Rules of Civil Procedure. "Cases interpreting the Federal Rules of Civil Procedure are authority in the construction of the Alabama Rules of Court Procedure." Bracy v.Sippial Elec. Co., 379 So.2d 582, 584 (Ala. 1980). Federal cases interpreting and applying Federal Rule 23 are therefore cited and discussed herein as if interpreting and applying Alabama's Rule 23.