Wanda **JENKINS**, et al.,
**Plaintiffs-Appellees,**

v.

**RAYMARK INDUSTRIES, INC.,** et al.,
**Defendants-Appellants.**

No. 85–2815.

United States Court of Appeals,
Fifth Circuit.

Feb. 5, 1986.

Rehearing and Rehearing En Banc
Denied March 3, 1986.

Marlin Thompson, Orange, Tex., Walter Umphrey, Port Arthur, Tex., Paul L. Sadler, Henderson, Tex., for plaintiffs-appellees.

Rex Houston, Henderson, Tex., Messrs, J. Dennis Chambers, O.J. Weber, Texarkana, Tex., Frank M. Bean, Edward Hennessy, Houston, Tex., Thomas W. Hathaway, Tyler, Tex., Joseph R. Steele, Orange, Tex., Grover Russell, Jr., Center, Tex., Messrs. Brent M. Rosenthal, Frederick M. Baron, Dallas, Tex., Messrs. David L. Tolin, R. Lyn Stevens, John G. Tucker, Beaumont, Tex., Raymond T. Matthews, Houston, Tex., Robert K. Wise, Jeffrey S. Lynch, Dallas, Tex., Dan Mayfield, Waco, Tex., O.J. Weber, Beaumont, Tex., Elizabeth Thompson, Houston, Tex., Roberte Dodson, Texarkana, Tex., Dale L. Trimble, Houston, Tex., Clyde Braken, Dallas, Tex., Andrew C. Schirrmeister, Houston, Tex., John H. Hall, Dallas, Tex., Richard L. Josephson, Houston, Tex., Sandra F. Clark, Beaumont, Tex., Robert Scott, F. Walter Conrad, Houston, Tex., Don W. Kent, Tyler, Tex., Gordon R. Pate, Beaumont, Tex., Jack Flock, Tyler, Tex., Messrs. Gary D. Elliston, J. Carlisle DeHay, Jr., Dallas, Tex., Gail C. Jenkins, Beaumont, Tex., John Sharp, Longview, Tex., for defendants-appellants.

Before GEE, ALVIN B. RUBIN and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

In this interlocutory appeal, the thirteen defendants[1] challenge the decision of District Judge Robert M. Parker to certify a class of plaintiffs with asbestos-related claims. We affirm.

---

1. Defendants include Raymark Industries, Inc.; Armstrong World Industries, Inc.; Keene Corporation; Celotex Corporation; Eagle-Picher Industries, Inc.; Fibreboard Corporation; Nicolet, Inc.; Owens-Illinois, Inc.; Pittsburg Corning Corporation; GAF Corporation; Standard Insulations; Combustion Engineering, Inc. and Owens-Corning Fiberglas Corporation.

## I. Background to Judge Parker's Plan

Experts estimate that at least 21 million American workers have been exposed to "significant" amounts of asbestos at the workplace since 1940; other millions have been exposed through environmental contact or contact with relatives who have worked with the products. R. Seltzer, *Punitive Damages in Mass Tort Litigation: Addressing the Problems of Fairness, Efficiency and Control*, 52 Fordham L.Rev. 37, 37 n. 1 (1983); Note, *Mass Tort Claims and the Corporate Tortfeasor: Bankruptcy Reorganization and Legislative Compensation Versus the Common-Law Tort System*, 61 Tex.L.Rev. 1297, 1301 n. 15 (1983). Because of its injurious propensities, such exposure, in human terms, has meant that literally tens of thousands of people fall ill or die from asbestos-related diseases every year. *E.g.*, Note, *Who Will Compensate the Victims of Asbestos-Related Diseases? Manville's Chapter 11 Fuels the Fire* [hereinafter, *Manville*], 14 Envtl.L. 465, 466–67 (1984). In legal terms, it has translated into thousands of lawsuits, over 20,000 as of 1983, centered mainly in industrialized areas along the country's coasts. *See* Seltzer, *supra*, at 37 n. 1.

Courts, including those in our own circuit, have been ill-equipped to handle this "avalanche of litigation." *See* Note, *Manville, supra*, at 468–71. Our numerous opinions in asbestos-related cases have repeatedly recognized the dilemma confronting our trial courts, and expressed concern about the mounting backlog of cases and inevitable, lengthy trial delays. *See, e.g., Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 416 n. 2 (5th Cir.1986) (Clark, C.J., dissenting); *Jackson*, 727 F.2d 506, 524 (5th Cir.1984); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 348–52 (5th Cir.1982) (sympathizing with caseload and encouraging trial court innovation, such as the quoted Memorandum by Judge Parker); *Migues v. Fibreboard Corp.*, 662 F.2d 1182, 1189 (5th Cir.1981) (calling for "new approaches to the national tragedy of asbestos-related disease").

About 5,000 asbestos-related cases are pending in this circuit. Much, though by no means all, of the litigation has centered in the Eastern District of Texas. Nearly nine hundred asbestos-related personal injury cases, involving over one thousand plaintiffs, were pending there in December of 1984. Despite innovative streamlined pretrial procedures and large-scale consolidated trials of multiple plaintiffs, the dockets of that district's courts remained alarmingly backlogged. Plaintiffs had waited years for trial, some since 1979—and new cases were (and still are) being filed every day. It is predicted that, because asbestos-related diseases will continue to manifest themselves for the next 15 years, filings will continue at a steady rate until the year 2000.

In early 1985, ten of these plaintiffs responded by moving to certify a class of all plaintiffs with asbestos-related personal injury actions pending in the Eastern District on December 31, 1984.[2] These plaintiffs hoped to determine in the class action one overarching issue—the viability of the "state of the art" defense. Because the trial of that issue consistently consumed substantial resources in every asbestos trial, and the evidence in each case was either identical or virtually so, they argued, a class determination would accelerate their cases.

## II. The Plan

Following copious briefing and several hearings, the district court granted the motion. In his order of October 16, 1985, Judge Parker carefully considered the request under Rule 23(a), (b)(1) and (b)(3) of the Federal Rules of Civil Procedure. Finding a "limited fund" theory too speculative, he refused to certify the class under Rule 23(b)(1); by contrast, he found all of the elements for a 23(b)(3) action present. Drawing on his past experience, the judge

---

**2.** Three additional plaintiffs later moved to intervene. Proposed class counsel already represented about 80% of all member plaintiffs in their individual cases, and had tried numerous large and small asbestos cases.

concluded that evidence concerning the "state of the art" defense would vary little as to individual plaintiffs while consuming a major part of the time required for their trials. Considerable savings, both for the litigants and for the court, could thus be gained by resolving this and other defense and defense-related questions, including product identification, product defectiveness, gross negligence and punitive damages, in one class trial.[3] The court further found that the named representatives had "typical" claims, and that they and their attorneys would adequately represent the other class members. Accordingly, it certified the class as to the common questions, ordering them resolved for the class by a class action jury. The class jury would also decide all the individual issues in the class representatives' underlying suits; individual issues of the unnamed members would be resolved later in "mini-trials" of seven to ten plaintiffs. Although the class action jury would evaluate the culpability of defendants' conduct for a possible punitive damage award, any such damages would be awarded only after class members had won or settled their individual cases. The court subsequently appointed a special master to survey the class and prepare a report, detailing the class members and their claims, to apprise the jury of the gravity and extent of the absent members'

claims and the typicality of the representatives' claims.

Defendants moved for reconsideration or, in the alternative, certification of the decision for interlocutory appeal. The court granted defendants' alternate motion.

On appeal, defendants challenge the court's decision on three grounds: (1) the class fails to meet the requirements of Rule 23; (2) Texas law proscribes a bifurcated determination of punitive damages and actual damages; and (3) the contemplated class format is unconstitutional.

## III. Discussion

■ The purpose of class actions is to conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740, 749 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979)). To ensure that this purpose is served, Rule 23 demands that all class actions certified under Rule 23(b)(3) meet the requirements of both 23(a): numerosity, commonality, typicality, and adequacy of representation; and 23(b)(3): predominance and superiority.[4] The district court has wide discretion

---

**3.** The court pointed to the following general issues:

    (a) which products, if any, were asbestos-containing insulation products capable of producing dust that contained asbestos fibers sufficient to cause harm in its application, use, or removal;

    (b) which of the Defendants' products, if any, were defective as marketed and unreasonably dangerous;

    (c) what date each Defendant knew of should have known that insulators and their household members were at risk of contracting an asbestos-related injury or disease from the application, use, or removal of asbestos-containing insulation products; and

    (d) what amount of punitive damages, if any, should be awarded to the class as punishment for the Defendants' conduct.

**4.** Rule 23. Class Actions

    (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only

if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

    (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the

in deciding whether or not to certify a proposed class. Assuming the court considers the Rule 23 criteria, we may reverse its decision only for abuse of discretion. *Horton v. Goose Creek Independent School District*, 690 F.2d 470, 483 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 117 (5th Cir.1975).

## IV. Rule 23

■ Defendants argue that this class meets none of the Rule 23 requirements, except "numerosity." There is no merit to this argument.

■ The threshold of "commonality" is not high. Aimed in part at "determining whether there is a need for combined treatment and a benefit to be derived therefrom," *In re Agent Orange Product Liability Litigation*, 506 F.Supp. 762, 787 (E.D.N.Y.1980), *modified*, 100 F.R.D. 718 (1983), *mandamus denied sub nom. In re Diamond Shamrock Chemicals Co.*, 725 F.2d 858 (2d Cir.), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984), the rule requires only that resolution of the common questions affect all or a substantial number of the class members, *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982). Defendants do not claim that they intend to raise a "state of the art" defense in only a few cases; the related issues are common to all class members.

■ The "typicality" requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims. *E.g., In re Asbestos School Litigation*, 104 F.R.D. 422, 429 (E.D.Pa.1984); *In re Federal Skywalk Cases*, 93 F.R.D. 415, 422 (W.D.Mo.), *vacated on other grounds*, 680 F.2d 1175

(8th Cir.), *cert. denied sub nom. Stover v. Rau*, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982); *cf. General Telephone Co. of Southwest*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13, 72 L.Ed.2d at 750 n. 13 (both commonality and typicality "serve as guideposts for determining whether … maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence"). Defendants do not contend that the named plaintiffs' claims rest on theories different from those of the other class members.

■ The "adequacy" requirement looks at both the class representatives and their counsel. Defendants have not shown that the representatives are "inadequate" due to an insufficient stake in the outcome or interests antagonistic to the unnamed members.[5] *See Stewart*, 669 F.2d at 334–35; *In re Asbestos School Litigation*, 104 F.R.D. at 430; *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 174–75 (E.D.Pa.1979). Neither do they give us reason to question the district court's finding that class counsel is "adequate" in light of counsel's past experience in asbestos cases, including trials involving multiple plaintiffs.

■ We similarly find no abuse in the court's determination that the certified questions "predominate," under Rule 23(b)(3). In order to "predominate," common issues must constitute a significant part of the individual cases. *See In re Asbestos School Litigation*, 104 F.R.D. at 431–32; *In re Tetracycline Cases*, 107 F.R.D. 719, 727 (W.D.Mo.1985); *see also In re Asbestos School Litigation*, 107 F.R.D. 215, 218–20 (E.D.Pa.1985). It is difficult to imagine that class jury findings on the class questions will not significantly ad-

---

extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In addition, Rule 23(c)(4)(A) allows certification as to only certain issues, where appropriate.

**5.** Moreover, dissatisfied members have the opportunity to "opt out" of the class.

vance the resolution of the underlying hundreds of cases.[6]

Defendants also argue that a class action is not "superior"; they say that better mechanisms, such as the Wellington Facility[7] and "reverse bifurcation,"[8] exist for resolving these claims. Again, however, they have failed to show that the district court abused its discretion by reaching the contrary conclusion. We cannot find that the Wellington Facility, whose merits we do not question, is so superior that it must be used to the exclusion of other forums. Similarly, even if we were prepared to weigh the merits of other procedural mechanisms, we see no basis to conclude that this class action plan is an abuse of discretion.

Courts have usually avoided class actions in the mass accident or tort setting. Because of differences between individual plaintiffs on issues of liability and defenses of liability, as well as damages, it has been feared that separate trials would overshadow the common disposition for the class. *See* Advisory Committee Notes to 1966 Amendment to Fed.R.Civ.P. 23(b)(3). The courts are now being forced to rethink the alternatives and priorities by the current volume of litigation and more frequent mass disasters. *See* McGovern, *Management of Multiparty Toxic Tort Litigation: Case Law and Trends Affecting Case Management*, 19 Forum 1 (1983). If Congress leaves us to our own devices, we may be forced to abandon repetitive hearings and arguments for each claimant's attorney to the extent enjoyed by the profession in the past. Be that as time will tell, the decision at hand is driven in one direction by all the circumstances. Judge Parker's plan is clearly superior to the alternative of repeating, hundreds of times over, the litigation of the state of the art issues with, as that experienced judge says, "days of the same witnesses, exhibits and issues from trial to trial."

This assumes plaintiffs win on the critical issues of the class trial. To the extent defendants win, the elimination of issues and docket will mean a far greater saving of judicial resources. Furthermore, attorneys' fees for all parties will be greatly reduced under this plan, not only because of the elimination of so much trial time but also because the fees collected from all members of the plaintiff class will be controlled by the judge. From our view it seems that the defendants enjoy all of the advantages, and the plaintiffs incur the disadvantages, of the class action—with one exception: the cases are to be brought to trial. That counsel for plaintiffs would urge the class action under these circumstances is significant support for the district judge's decision.

Necessity moves us to change and invent. Both the *Agent Orange* and the *Asbestos School* courts found that specific issues could be decided in a class "mass tort" action—even on a nationwide basis. We approve of the district court's decision in finding that this "mass tort" class could be certified.

6. Defendants argue that not all of the defendants in the underlying actions have been named in the class suit; in addition, some 70–80 potential class members have sued none of the class defendants. These arguments go nowhere, however. At worst, these latter "plaintiffs" will simply be unaffected by the class action findings. Conversely, if these "plaintiffs" do not opt out, the district court may decide to redefine the class to include only plaintiffs with claims against the named defendants. As for the plaintiffs who have sued both named and unnamed defendants, even if all class issues must be retried in the mini-trials as to all the unnamed defendants, the evidence will necessarily be significantly less than if no class findings had been made.

7. The Wellington Facility, funded by major asbestos producers, is a newly-operational center designed to resolve asbestos-related claims. The center is named for Dean Wellington of the Yale University Law School, who assisted in its organization.

8. "Reverse bifurcation" originated in the Third Circuit as a means of processing that circuit's backlog of asbestos-related cases. As its name suggests, it is a modified bifurcated trial format whereby plaintiffs in a first trial prove only that exposure to some asbestos product has caused their damages. Thereafter, either the cases are settled or remaining issues are resolved in second or third trials.

## V. Other Contentions

Defendants' remaining arguments challenge the bifurcated trials under Texas law and the United States Constitution. Defendants contend that, under Texas law, punitive damages cannot be determined separately from actual damages because the culpability of their conduct must be evaluated relative to each plaintiff. We disagree.

■ The purpose of punitive damages is not to compensate the victim but to create a deterrence to the defendant, *Maxey v. Freightliner Corp.*, 665 F.2d 1367, 1378 (5th Cir.1982), and to protect the public interest, *Bank of North America v. Bell*, 493 S.W.2d 633, 636 (Tex.Civ.App.—Houston 1973, no writ) (also noting that "[w]e perceive it to be our duty to examine this record to determine whether the exemplary award is excessive standing alone and without reference to the finding on actual damages"). The focus is on the defendant's conduct, rather than on the plaintiff's. While no plaintiff may receive an award of punitive damages without proving that he suffered actual damages, *e.g., Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753–54 (Tex.1984); *City Products Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.1980) (jury finding of no actual damages precludes award of punitive damages), the allocation need not be made concurrently with an evaluation of the defendant's conduct. The relative timing of these assessments is not critical.

The critical issue in Texas punitive damages law is excessiveness or "reasonable proportionality." Whether a given award is excessive is a question of fact. *See Tatum v. Preston Carter Co.*, 702 S.W.2d 186, 188 (1986); *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). "The reasonable proportion rule does not, standing alone, serve to fix a particular ratio," *Tatum*, 702 S.W.2d at 188; that ratio will vary according to the facts of the case, *id.* at 188. In determining whether an award is excessive the court must consider: (1) the nature of the wrong; (2) the character

of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* at 188; *Alamo National Bank*, 616 S.W.2d at 910.

■ The format in this case allows for the district court's review of the reasonableness of each plaintiff's punitive damage award and for our review of the standards which the court has applied. Texas law does not require more.

Defendants' constitutional challenges to bifurcation are equally unavailing. Like their other claims, these arguments only recast in constitutional terms their concern that, because the representatives' cases are "better" than the unnamed plaintiffs', the jury's view of the class claims will be skewed.

Although it fails to raise an issue of constitutional magnitude, this concern is nevertheless legitimate. Care must, of course, be taken to ensure fairness. Whatever the jury is told about the claims of the unnamed plaintiffs, it must be made aware that none of those claims have been proved; even after the class trial, they will still be mere allegations. The jury must not assume that all class members have equivalent claims: whatever injuries the unnamed plaintiffs have suffered may differ from the class representatives' as well as from one another's. Should the jury be allowed to award in the aggregate any punitive damages it finds appropriate, it must be instructed to factor in the possibility that none of the unnamed plaintiffs may have suffered *any* damages. Alternatively, the jury could be allowed to award an amount of money that each class member should receive for each dollar of actual damages awarded. Either way, the jury should understand that it must differentiate between proven and still-unproved claims, and that all class members, who recover actual damages from a defendant held liable for punitive damages, will share in the punitive award.

Furthermore, fairness as well as necessity dictates that both the parties and the court ensure that *all* of the necessary findings can be and are made in the class action trial. Sufficient evidence must be adduced for every one of each defendant's products to which a class member claims exposure so that the class jury can make the requisite findings as to *each* product and *each* defendant for such questions as periods of manufacture; areas and dates of distribution; "state of the art" knowledge for each relevant kind of product, use and user; when, if ever, conduct was grossly negligent; and dates and types of warnings if marketing defect is alleged.

The task will not be easy. Nevertheless, particularly in light of the magnitude of the problem and the need for innovative approaches, we find no abuse of discretion in this court's decision to try these cases by means of a Rule 23(b)(3) class suit.

AFFIRMED.