UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-31189
_____

DENNIS MULLEN,

Plaintiff - Appellee,

versus

TREASURE CHEST CASINO, LLC; ET AL,

Defendants,

TREASURE CHEST CASINO, LLC,

Defendant - Appellant.

_____

DENNIS MULLEN; SHEILA BACHEMIN; MARGARET PHIPPS,

Plaintiffs - Appellees,

versus

TREASURE CHEST CASINO, LLC; ET AL,

Defendants,

TREASURE CHEST CASINO, LLC,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

August 19, 1999

Before EMILIO M. GARZA, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Treasure Chest Casino, LLC ("Treasure Chest") appeals from an interlocutory order of the district court certifying under Federal Rule of Civil Procedure 23(b)(3) a plaintiff class consisting of injured Treasure Chest employees. We affirm the district court's class certification.

## I. BACKGROUND

The appellees, Dennis Mullen, Sheila Bachemin, and Margaret Phipps (collectively, the "Named Plaintiffs"), are former employees of the M/V Treasure Chest Casino (the "Casino"), a floating casino owned and operated out of Kenner, Louisiana by appellant Treasure Chest. Mullen was an assistant pit boss, Bachemin was a dealer, and Phipps was employed as a slot-floor person and dealer.

Each Named Plaintiff has suffered respiratory illness allegedly caused by the Casino's defective and/or improperly maintained air-conditioning and ventilating system. Each was diagnosed with asthma and bronchitis while employed aboard the Casino. Mullen and Bachemin, while aboard the Casino, suffered respiratory attacks requiring hospitalization. Kathleen McNamara, the Named Plaintiffs' physician, testified in a deposition that as many as half of the 300 Casino employees that she had treated suffered from similar respiratory problems. She attributed the Named Plaintiffs' and other crew members' maladies to extremely smoky conditions in the Casino.

In January 1996, the Named Plaintiffs filed suit against Treasure Chest, making Jones Act, unseaworthiness, and maintenance and cure claims. They sought Rule 23 certification of a class consisting of

> all members of the crew of the M/V Treasure Chest Casino who have been stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system in place aboard the vessel.

The parties conducted pre-certification discovery that included deposing the Named Plaintiffs, Dr. McNamara, and two other physicians. The parties then briefed the district court, which heard arguments in July 1997.

On August 29, 1997, the district court certified the proposed class under Rule 23(b)(3). Under the court's plan, the liability issues common to all class members will be tried together in an initial trial phase. Those common issues include whether the employees of the Casino are seamen within the meaning of the Jones Act, whether the Casino is a vessel within the meaning of the Jones Act, whether the Casino was rendered unseaworthy by the air quality aboard, and whether Treasure Chest was negligent in relation to the Casino's ventilation system. If the class prevails on the common liability issues in phase one, the issues affecting only individual class members will be tried in a second phase in waves of approximately five class members at a time. These limited issues include causation, damages, and comparative negligence.

Treasure Chest sought to appeal the class certification order, and the district court certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b). We granted Treasure Chest permission to appeal.

## II. DISCUSSION

A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3). The four 23(a) prerequisites include

> (1) numerosity (a class so large that joinder of

-3-

all members is impracticable); (2) commonality
(questions of law or fact common to the class);
(3) typicality (named parties' claims or defenses
are typical of the class); and (4) adequacy of
representation (representatives will fairly and
adequately protect the interests of the class).

*Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231, 2245 (1997).

The two 23(b) requirements are "predominance" and "superiority":

"Common questions must 'predominate over any questions affecting

only individual members'; and class resolution must be 'superior

to other available methods for the fair and efficient

adjudication of the controversy.'"  *Id.* at 2246 (quoting Fed. R.

Civ. P. 23(b)(3)).

Treasure Chest argues on appeal that the district court

erred in finding any of the Rule 23 requirements satisfied.[1]

Before evaluating the six requirements seriatim, we note that the

district court maintains great discretion in certifying and

managing a class action.  *See Montelongo v. Meese*, 803 F.2d 1341,

---

[1] Treasure Chest also argues on appeal that implicit in Rule 23 is an additional requirement that any class must be capable of objective identification before it can be certified.  It contends that because being a member of the class in this case is contingent upon ultimate issues of causation, i.e., whether the class member's illness was "caused or exacerbated by the defective ventilation system," Treasure Chest is prejudiced by being forced to defend against claimants who may not end up being members of the class.  This same argument was already rejected by this Court in *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993).  There, we considered a defendant's contention that a class of pension beneficiaries was "hopelessly 'circular'" because membership in the class was defined by the improper reduction of the class members' benefits, which was also the ultimate issue in the case.  *Id.* at 1105.  We found that the defendant's argument was "meritless and, if accepted, would preclude certification of just about any class of persons alleging injury from a particular action.  These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership."  *Id.*  Here, because the class is similarly linked by a common complaint, the fact that the class is defined with reference to an ultimate issue of causation does not prevent certification.

-4-

1351 (5th Cir. 1986). We will reverse a district court's decision to certify a class only upon a showing that the court abused its discretion, *see Jenkins v. Raymark Industries*, 782 F.2d 468, 471-72 (5th Cir. 1986), or that it applied incorrect legal standards in reaching its decision, *see Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1104-05 (5th Cir. 1993).

A. Numerosity

The court found that "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), referring to three factors. First, the class would likely consist of between 100 and 150 members. Second, owing to the transient nature of employment in the gambling business, it was likely that some of the putative class members were geographically dispersed and unavailable for joinder. Third, putative class members still employed by the Casino might be reluctant to file individually for fear of workplace retaliation. Treasure Chest challenges only the second of the district court's three reasons. It asserts that the district court's claim that class members would be geographically dispersed was unsupported by evidence. They reference the court's own comment that the "plaintiff has not introduced any specific evidence that there are potential class members that have moved out of the area."

We find no abuse of discretion in the district court's finding of numerosity. Although the number of members in a proposed class is not determinative of whether joinder is

impracticable, *see Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981), the size of the class in this case-- 100 to 150 members--is within the range that generally satisfies the numerosity requirement. *See* 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable"); *cf. Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members).

Furthermore, the additional factors mentioned by the district court support its finding of numerosity. *See Zeidman*, 651 F.2d at 1038 (discussing relevant factors including, for example, "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim"). Notwithstanding the lack of any direct evidence, the district court reasonably inferred from the nature of the putative class members' employment that some of them would be geographically dispersed. It also reasonably presumed that those potential class members still employed by Treasure Chest might be unwilling to sue individually or join a suit for fear of retaliation at their jobs. Based upon those considerations, it was within the district court's discretion to find that joinder of all 100 to 150 class members would be impracticable.

## B. Commonality

The district court found that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), on the basis of the class members' identical theories of liability, their common claims under the Jones Act, and their uniform allegations of suffering injury from second-hand smoke. Treasure Chest challenges the district court's assertion that all plaintiffs' claims relate to second-hand smoke.

The district court did not abuse its discretion in finding commonality. The test for commonality is not demanding and is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). In this case, the putative class members will assert claims for negligence under the Jones Act and for operating an unseaworthy vessel. The common issues pertaining to these theories of liability--i.e., the class members' status as Jones Act seamen, the negligence of Treasure Chest, and the unseaworthiness of the Casino--are independently sufficient to establish commonality. It is therefore irrelevant whether the class members uniformly allege damages from second-hand smoke.

## C. Typicality

The district found the "the claims or defenses of the parties are typical of the claims or defenses of the class,"

Fed. R. Civ. P. 23(a)(3), because the Named Plaintiffs and the class members, by definition, all allege to have suffered occupation-related respiratory illness. Treasure Chest contends that the Named Plaintiffs' claims are not typical of the class because a wide array of claims could fall under the "respiratory illness" category.

We find no abuse in the district court's finding of typicality. Like commonality, the test for typicality is not demanding. It "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightbourn*, 118 F.3d at 426. In this case, the Named Plaintiffs' and the proposed class members' legal and remedial theories appear to be exactly the same. The class complaint indicates that they will all premise liability for the Casino's defective air ventilation system under the Jones Act and the doctrine of seaworthiness. Any variety in the illnesses the Named Plaintiffs and the class members suffered will not affect their legal or remedial theories, and thus does not defeat typicality.

D. Adequacy of Representation

The district court stated that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), because the Named Plaintiffs' interests are identical to the interests of the proposed class and their attorneys have extensive experience litigating class actions and

Jones Act cases.  Treasure Chest argues on the appeal that the district court's finding was erroneous because the Named Plaintiffs and the class members have suffered from varied illnesses and have varying susceptibilities to respiratory ailments.

We find no abuse of discretion in the district court's finding.  Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests.  *See Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (considering whether named plaintiffs have "an insufficient stake in the outcome or interests antagonistic to the unnamed members" in evaluating adequate representation requirement).  The differences described by Treasure Chest may create variances in the ways that the Named Plaintiffs and class members will prove causation and damages.  A class member who has never smoked, for example, may have less difficulty in proving that the conditions inside the Casino caused her asthma than will Bachemin, who has a history of smoking and whose claim may be subject to a defense of contributory negligence.  Such a difference, however, does not affect the alignment of their interests.  Nothing indicates that the class members will be inadequately represented by the Named Plaintiffs and their counsel.

E. Predominance

We see no abuse in the district court's finding that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins,* 782 F.2d at 472. The district court held that the issues to be tried commonly--seamen status, vessel status, negligence, and seaworthiness--were significant in relation to the individual issues of causation, damages, and contributory negligence. Treasure Chest argues on appeal that the district court abused its discretion by failing to weigh the common against the individual issues and by improperly finding causation to be a common issue.

Treasure Chest's arguments are without merit. First, although the court's predominance inquiry was not lengthy, there is no indication that the court limited its inquiry to counting issues instead of weighing them. Second, explicit in the district court's decision is a finding that causation is a unique

issue that will be resolved in the trial plan's second-phase individual trials.

Even examining the district court's predominance analysis more closely, we find no abuse. The common issues in this case, especially negligence and seaworthiness, are not only significant but also pivotal. They will undoubtedly require the parties to

produce extensive evidence regarding the Casino's air ventilation system, as well as testimony concerning Treasure Chest's knowledge of, and response to, the Casino employees' respiratory problems and complaints. The phase-one jury will have the difficult task of determining whether the air quality aboard the Casino resulted from a negligent breach of Treasure Chest's duty to its employees or rendered the Casino unseaworthy. If Treasure Chest prevails on those two issues alone, they will prevail in the case.

Moreover, this case does not involve the type of individuated issues that have in the past led courts to find predominance lacking. For example, in *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231 (1997), the Supreme Court found that common issues did not predominate where the members of the plaintiff class were exposed to asbestos-containing products from different sources over different time periods, some of the class members were asymptomatic while others had developed illnesses, and the class members were from a variety of states requiring the application of a multitude of different legal standards. *See id.* at 2250 (citing *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 626 (3d Cir. 1996)). Similarly, in *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), this Court found that a putative class of addicted smokers did not meet the predominance requirement because there were complex choice-of-law issues and

-11-

the case involved novel addiction-as-injury claims with no track record from which a court could determine which issues were "significant." *See id.* at 741-45. Here, by contrast, the putative class members are all symptomatic by definition and claim injury from the same defective ventilation system over the same general period of time. Because all of the claims are under federal law, there are no individual choice-of-law issues. And, because negligence and doctrine-of-seaworthiness claims are time-tested bases for liability, the district court could reasonably evaluate the significance of the common issues without first establishing a track record.

F. Superiority

We also find no abuse of discretion in the district court's finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The district court based its superiority finding on the fact that the class litigation in this case would not present the degree of managerial complexities that prompted this Court to decertify the putative class in *Castano*. Specifically, the district court mentioned the lack of any complex choice-of-law or *Erie* problems, and that the class would consist of only hundreds, instead of millions, of members. The bifurcated-trial plan, the court found, would "promote judicial economy and avoid the wasteful, duplicative litigation which would inevitably result if these

-12-

cases were tried individually."  Treasure Chest argues that the
district court abused its discretion by failing adequately to
consider how a trial on the merits would be conducted.  It
contends that because the Named Plaintiffs describe somewhat
different causes for their ailments, a phase-one judgment of
negligence or unseaworthiness related solely to tobacco
smokewould be inadequate insofar as it would preclude plaintiffs
from recovering for ailments that were caused by sources other
than tobacco smoke in the phase-two trials.

We find no merit in Treasure Chest's argument.  First,
Treasure Chest overstates the importance of the Named Plaintiffs'
conjecture regarding their own illnesses.  It is true that, in
addition to making second-hand smoke complaints, Dennis Mullen
has complained about the temperature aboard the Casino, Sheila
Bachemin has described one incident where paint fumes on the
Casino "kicked in" her asthma, and Margaret Phipps has stated
that her asthma might have been caused by dust on the air vents
or germs on the radios used by multiple casino employees.  As lay
witnesses, however, the Named Plaintiffs' opinions about the
possible causes of their own respiratory conditions are of
negligible evidentiary weight and probably would not be
admissible at trial.  *See* Fed. R. Evid. 701 (limiting
admissibility of nonexpert opinion testimony); *Doddy v. Oxy USA,
Inc.*, 101 F.3d 448, 460 (5th Cir. 1996) ("[A] person may testify
as a lay witness only if his opinions or inferences do not

-13-

require any specialized knowledge and could be reached by any ordinary person."); *Henry v. A/S Ocean*, 512 F.2d 401, 408 (2d Cir. 1975) (finding that the plaintiff in a Jones Act suit was properly prevented from testifying to his opinion that his persistent colds and skin rash had been caused by an accident in which he was knocked overboard). The medical experts already deposed in this case have unwaveringly cited excessive second-hand smoke as the most likely Casino-related factor to have exacerbated or caused the putative class members' respiratory problems. It is thus likely that the trial will focus on excessive second-hand smoke as both the effect of the defective ventilation system and the cause of the putative class members' respiratory problems.

Furthermore, even if the class does claim at trial that the Casino's ventilation system was defective in relation to more than tobacco smoke, we are confident that the district court can ably manage this case as a class action. Our precedent limits a negligent party's liability to injuries that are caused by the same condition that rendered the party negligent. *See Gavagan v. United States*, 955 F.2d 1016, 1020-21 (5th Cir. 1992). The court can easily abide by this precedent by instructing the jury to answer special verdicts finding whether the Treasure Chest was negligent, or the Casino was unseaworthy, as to each alleged causal agent, i.e., tobacco smoke, dust mites, fungi, paint fumes, et cetera. The court can then properly limit the injuries

-14-

for which the phase-two juries could find Treasure Chest liable. Thus, if the phase-one jury were to find that Treasure Chest was negligent as to tobacco smoke but not as to paint fumes, any class member whose injuries were found by a phase-two jury to be caused by paint fumes would be unable to recover. Even though rendering multiple special verdicts would complicate the task for the phase-one jury and the court, we would see no abuse in the district court's finding such a process superior to conducting duplicative individual trials.

We also agree with the district court that none of the superiority concerns raised by our decision in *Castano* requires a different result. There, many of the manageability problems stemmed from the million-person class membership, the complex choice-of-law issues, the novel addiction-as-injury cause of action, and the extensive subclassing requirements. As already discussed, none of those problems exist in this case. In fact, unlike the "Frankenstein's monster" feared in *Castano*, 84 F.3d at 745 n.19, this class is akin to other bifurcated class actions this Court has approved. *See Watson v. Shell Oil Co.*, 979 F.2d 1014 (5th Cir. 1992) (finding no abuse in the district court's certification of a bifurcated class action arising from an oil refinery explosion where liability and punitive damages would be resolved commonly and injury, causation, and actual damages would be resolved individually); *Jenkins*, 782 F.2d 468 (finding no abuse of discretion in district court's certification of a

-15-

bifurcated class action where asbestos producers' "state of the art defense" as well as product identification, product defectiveness, negligence, and punitive damages would be resolved commonly and causation, actual damages, and comparative fault would tried individually); *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D. Fla. 1973), *aff'd*, 507 F.2d 1278-79 (5th Cir. 1975) (unpublished) (certifying bifurcated class action on behalf of 350 passengers who were fed contaminated food aboard cruise ship where negligence would be tried commonly and causation and damages would be tried individually).

In *Castano*, this Court expressed a concern that having one jury consider the defendant's conduct and another consider the plaintiffs' comparative negligence could create Seventh Amendment problems. *See Castano*, 84 F.3d at 750-51 (citing *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995)). This does not change our view of the district court's superiority finding. Treasure Chest did not raise this issue to the district court nor has it been argued on appeal. We are reluctant to find that the district abused its discretion by failing to consider an issue that was not raised by the parties.

In any case, we would not find the risk of infringing upon the parties' Seventh Amendment rights significant in this case. The Seventh Amendment does not prohibit bifurcation of trials as long as the "'the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by

-16-

different juries.'" *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 320 n.50 (5th Cir. 1998) (quoting *Rhone-Poulenc*, 51 F.3d at 1303); *see Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978). In *Castano*, we were concerned that allowing a second jury to consider the plaintiffs' comparative negligence would invite that jury to reconsider the first jury's findings concerning the defendants' conduct. We believe that such a risk has been avoided here by leaving all issues of causation for the phase-two jury. When a jury considers the comparative negligence of a plaintiff, "the focus is upon causation. It is inevitable that a comparison of the conduct of plaintiffs and defendants ultimately be in terms of causation." *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1431 (5th Cir. 1983) (en banc); *see id.* (permitting the use of comparative negligence in strict liability claims). Thus, in considering comparative negligence, the phase-two jury would not be reconsidering the first jury's findings of whether Treasure Chest's conduct was negligent or the Casino unseaworthy, but only the degree to which those conditions were the sole or contributing cause of the class member's injury. Because the first jury will not be considering any issues of causation, no Seventh Amendment implications affect our review of the district court's superiority finding.

## III. CONCLUSION

For the foregoing reasons, we find that the district court

did not abuse its discretion in certifying under Rule 23(b)(3) a class of all Casino employees stricken with occupation-related respiratory illnesses.  AFFIRMED.

EMILIO M. GARZA, dissenting:

Treasure Chest Casino, L.L.C. ("Treasure Chest") appeals the district court's order granting class certification under Federal Rule of Civil Procedure 23(b)(3). The majority affirms, finding that the district court did not abuse its discretion in concluding that the plaintiffs' class satisfies the requirements of Rule 23. I respectfully dissent.

I

Plaintiffs Dennis Mullen, Sheila Bachemin, and Margaret Phipps are crew members of the M/V Treasure Chest Casino ("Casino"), a vessel owned and operated by Treasure Chest in Kenner, Louisiana. They allege that they suffered respiratory illnesses as a result of inadequate ventilation aboard the vessel. According to the district court, the plaintiffs attribute their illnesses to second-hand smoke aboard the Casino. However, the record indicates that the plaintiffs allege other causes as well. In her deposition, Phipps complains of dust on the air vents and germs on the employee radios, and does not attribute her illness to second-hand smoke. Mullen, who does complain of excessive smoke aboard the Casino, also states in his deposition that his illness may have stemmed from the Casino's temperature being too hot or too cold. Bachemin complains of second-hand smoke, but she testifies about excessive paint fumes as well.

These plaintiffs sued Treasure Chest, on behalf of themselves and persons similarly situated, for negligence under the Jones Act, 46 U.S.C. § 688, for operating an unseaworthy vessel, and for failing to provide Maintenance and Cure. They moved to certify a class action under Rule 23(b)(3).[1] The district court certified a class consisting of "all members of the crew of

___

[1] The plaintiffs also requested that the district court certify a class under Rule 23(b)(1). The district court declined to address Rule 23(b)(1), on the grounds that the plaintiffs raised it for the first time their reply brief. On appeal, the plaintiffs do not raise Rule 23(b)(1) as a basis for class

-19-

the M/V Treasure Chest Casino who have been stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system in place aboard the vessel." Treasure Chest now appeals.

II

Federal Rule of Civil Procedure 23(a) sets forth four prerequisites for all class actions:

(1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Amchem Prods. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997) (quotation marks omitted). Once the criteria of Rule 23(a) are met, a party must show that class treatment is appropriate under one of the three categories enumerated in Rule 23(b). *See id.* at 614, 117 S. Ct. at 2245. Rule 23(b)(3), under which this class was certified, demands "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). These requirements are commonly referred to as predominance and superiority. *See Amchem*, 521 U.S. at 615, 117 S. Ct. at 2246. Rule 23(b)(3) applies to cases for which "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (quotations omitted).

The district court concluded that the plaintiffs' class satisfied Rule 23(a)'s requirements of

---

certification.

numerosity, commonality, typicality, and adequacy of representation. It also found that common issues of law and fact predominated over individual issues. The district court identified as common issues (1) whether Casino employees are seamen within the meaning of the Jones Act, (2) whether the Casino is a vessel within the meaning of the Jones Act, (3) whether the Casino was unseaworthy, and (4) whether the Casino's ventilation system was unreasonably suited to protect the class members from harm. It classified contributory negligence, damages, and causation as individual issues. Finally, the district court ruled that a class action was superior to other available methods of adjudicating the proposed class members' claims. In doing so, the district court relied on the plaintiffs' proposed trial plan, which provided: "The class action would include an initial phase in which the liability issues common to all plaintiffs would be tried together. Later if plaintiffs prevailed on liability, the unique issues such as damages (and causation if necessary), would be tried in waves of approximately five plaintiffs at a time." The district court reasoned that "this approach will promote judicial economy and avoid the wasteful, duplicative litigation which would inevitably result if these cases were tried individually."

### III

A district court "has wide discretion in deciding whether to certify a proposed class." *Lightbourn v. County of El Paso*, 118 F.3d 421, 425 (5th Cir. 1997). We may reverse its decision only for abuse of discretion. *See id.* Treasure Chest contends that the district court abused its discretion in finding that the proposed class satisfied Rule 23. According to Treasure Chest, the plaintiffs' class lacks numerosity, commonality, typicality, and adequacy of representation, and fails to satisfy Rule 23(b)(3)'s predominance and superiority requirements. The majority examines these six requirements and concludes that the district court did not abuse its discretion.

-21-

Under the law of our circuit, however, the district court abused its discretion in finding that a class action was "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).[2]

A court's inquiry into superiority "requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998); *see also* FED. R. CIV. P. 23(b)(3) (requiring that in assessing whether class treatment is superior, a court must consider "the difficulties likely to be encountered in the management of a class action"). It is an abuse of discretion to certify a class without adequately considering "how a trial on the alleged causes of action would be tried." *Castano v. American Tobacco Co.*, 84 F.3d 734, 751 (5th Cir. 1996); *cf. Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 552 F.2d 601, 603 (5th Cir. 1977) ("The district court's failure to consider the appropriate factors constitutes an abuse of discretion.").

The district court certified a class of all Casino employees who were "stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system." To prevail, these plaintiffs must prove both negligent breach of duty and proximate cause. *See Gavagan v. United States*, 955 F.2d 1016, 1019 n.6 (5th Cir. 1992). Under the trial plan, the issue of "whether the ventilation system of the M/V Treasure Chest Casino was unreasonably suited to protect the proposed class members from harm" will be tried as a common issue to a class jury. However, the issue of proximate cause will be tried as an individual issue to individual juries.

---

[2] Because I believe that the plaintiffs' class fails the superiority requirement of Rule 23(b)(3), I would not reach the other issues addressed in the majority's opinion, *i.e.*, numerosity, commonality, typicality, adequacy of representation, and predominance.

In upholding the district court's bifurcated approach to these two issues, the majority

relies on three cases, in which we allowed a district court to try the issue of negligence separately

from the issue of proximate cause. *See Watson v. Shell Oil Co.*, 979 F.2d 1014 (5th Cir. 1992);[3]

*Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468 (5th Cir. 1986); *Hernandez v. Motor Vessel

Skyward*, 507 F.2d 1278 (5th Cir. 1975) (unpublished). In general, of course, district courts have

the authority to bifurcate a trial, trying some issues on a class basis and others individually. *See*

FED. R. CIV. P. 23(c)(4)(A) (authorizing class treatment with respect to particular issues); FED.

R. CIV. P. 42(b) (authorizing separate trials for separate issues). However, in all of the cases

cited by the majority, the class members' injuries stemmed from a single hazard. In the instant

case, the class members attribute their various ailments to different aspects of the air aboard the

Casino. Mullen and Bachemin complain of second-hand smoke, whereas Phipps complains only

of dust on air vents and germs on employee radios. Mullen, additionally, points to the Casino's

temperature. Bachemin complains of paint fumes.

The district court abused its discretion by failing to consider the difficulties posed by the

plaintiffs' divers allegations.[4] In a negligence case, a defendant owes a duty "only with respect to

---

[3] Our opinion in *Watson* is no longer binding precedent on our circuit. As we have explained: "While [*Watson*] was awaiting rehearing en banc, it settled. According to the Internal Operating Procedure accompanying 5TH CIR. R. 35, the effect of granting a rehearing en banc is to vacate the previous opinion and judgment of the Court and to stay the mandate." *Castano*, 84 F.3d at 740 n.12 (quotation marks and citations omitted); *see Watson v. Shell Oil Co.*, 53 F.3d 663, 664 (5th Cir. 1994) (en banc).

[4] The plaintiffs suggest in a footnote that we should "disregard" the fact that the disparate sources of illness they allege (*e.g.*, smoke, temperature, germs, dust, fumes) might preclude class certification. They argue that a magistrate judge's ruling prevented them from discovering the precise nature of the defects in the ventilation system. The magistrate's discovery ruling is not before us on appeal. Even if it could be shown that discovery was insufficient, it does not follow that we must approve a class that fails to meet the requirements of Rule 23. Rather, we must decertify such a class, even if further discovery may eventually justify class treatment. *See Alabama*

those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Gavagan*,

955 F.2d at 1020 (emphasis omitted) (quoting 3 HARPER, JAMES & GRAY § 18.2, at 655). In

other words, a defendant is liable for negligence only when the plaintiff's injuries are caused by

the same conditions that render the defendant's conduct negligent. This principle is important to

consider, because in this case, different plaintiffs allege different "risks or hazards." *Id.* For

example, if the class jury finds the ventilation system negligent because of excessive smoke, a

plaintiff should not be able to recover for injuries caused by dust or germs. If it finds the

ventilation system negligent solely because of high levels of dust or germs, plaintiffs should not be

able to recover for injuries caused by smoke, temperature, or paint fumes.

The district court's trial plan fails to account for the fact that the plaintiffs allege a variety

of different "risks or hazards." There is nothing in the trial plan to ensure that the hazards found

by the class jury to constitute negligence are the same hazards based on which the individual juries

would determine proximate cause. Put simply, an individual jury might award damages caused by

smoke, even though the class jury found Treasure Chest liable only as to excessive dust or germs.

This sort of "mix-and-match" verdict simply does not satisfy the elements of negligence, because

it would hold Treasure Chest liable for hazards that were never found to constitute a negligent

breach of duty. The district court failed to consider the potential for its bifurcated approach to

yield such illegitimate verdicts.[5]

Of course, the risk of unjustified verdicts could be avoided if the individual juries

---

*v. Blue Bird Body Co.*, 573 F.2d 309, 323 (5th Cir. 1978) (decertifying class where discovery was insufficient to determine whether common issues existed).

[5] The majority suggests that the district court can avert this problem by instructing the class jury to answer special verdicts as to each hazard alleged by the plaintiffs. However, such special verdicts are not included in the district court's trial plan.

determined for themselves whether a given plaintiffs' injuries were caused by "those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Id.* To do so, however, the individual juries would be required to make essentially the same inquiry made by the class jury, that is, whether the hazards posed by the Casino's ventilation system unreasonably failed to protect the plaintiffs from harm. This overlap between the issues decided by the class jury and the individual juries impacts a court's superiority inquiry for two reasons. First, it may eviscerate one of the primary rationales for class treatment—judicial efficiency. *See Castano*, 84 F.3d at 749. Where the class jury and the individual juries must consider similar issues, it is likely that evidence presented at the class trial will be repeated during the individual trials. *See id.* As we have noted, "[t]he net result may be a waste, not a savings, in judicial resources." *Id.*

Second, having separate juries consider essentially the same issue may run afoul of the Seventh Amendment. "[I]nherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978); *see* U.S. CONST. amend. VII ("no fact tried by a jury shall be otherwise reexamined in any Court of the United States"). Therefore, a court may try a certain issue to a different jury only when that issue is "distinct and separable from the others." *Blue Bird Body*, 573 F.2d at 318. "Such a rule is dictated for the very practical reason that if separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent." *Id.* When the bifurcation of class and individual issues risks improper reconsideration of issues assigned to the class-wide jury, appellate courts have not hesitated to decertify the class. *See Castano*, 84 F.3d at 751; *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1302-03 (7th Cir. 1995).

These same concerns—judicial efficiency and the Seventh Amendment—are also implicated by the district court's plan to handle the issue of comparative negligence. Under the trial plan, comparative negligence will be considered by the individual juries, whereas the Casino's negligence will be considered by the class jury. These two issues are too closely related to allow bifurcated treatment. "Comparative negligence, by definition, requires a comparison between the defendant's and the plaintiff's conduct." *Castano*, 84 F.3d at 751; *see also Rhone-Poulenc*, 51 F.3d at 1303. Therefore, to properly try the issue of comparative negligence, the parties may need to repeat evidence concerning the Casino's conduct that was already presented to the class jury. *See Castano*, 84 F.3d at 751. Furthermore, in comparing the negligent conduct of the Casino with the negligent conduct of each plaintiff, the individual juries may "impermissibly reconsider[]" the class jury's determination as to the Casino's negligence, in violation of the Seventh Amendment. *Id.*; *see also Rhone-Poulenc*, 51 F.3d at 1303. Accordingly, "class treatment can hardly be said to be superior to individual adjudication." *Castano*, 84 F.3d at 751 (finding that a bifurcated class action failed Rule 23(b)(3)'s superiority requirement where the district court planned to try the issues of negligence and comparative negligence to separate juries).

IV

The district court in this case failed to consider "the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3). Specifically, it did not address how the disparate hazards alleged by each plaintiff impact whether bifurcated class treatment is feasible. This failure to adequately examine "how a trial on the alleged causes of action would be tried" constitutes an abuse of discretion and requires that we vacate the class certification order.

*Castano*, 84 F.3d at 752.  Accordingly, I dissent.